# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RODNEY HARGROVE, *et al.,*

    *Plaintiffs,*

  v.

CITY OF PHILADELPHIA, *et al.,*

    *Defendants.*

CIVIL ACTION
NO. 21-4082

**PAPPERT, J.**               **September 21, 2022**

## <u>MEMORANDUM</u>

   Rodney and Cindy Hargrove, co-administrators of Rodney Michael Hargrove's estate, sued the City of Philadelphia, Warden Nancy Gianetta, Warden Michele Farrell, and Prison Commissioner Blanche Carney under 42 U.S.C. § 1983 and Pennsylvania law.  Defendants moved to dismiss (ECF 9), and in response Plaintiffs filed an Amended Complaint (ECF 11).  Defendants moved to dismiss the amended pleading (ECF 13), to which Plaintiffs responded (ECF 14) but then subsequently sought leave to file a Second Amended Complaint (ECF 21).  For the reasons that follow, Plaintiffs' Motion for Leave is granted in part and denied in part, and Defendants' Motion is denied as moot.

I

   Shortly after 1:00 a.m. on March 18, 2021, a prison van from Curran Fromhold Correctional Facility in Philadelphia took Rodney Michael Hargrove to a SEPTA bus stop just off prison grounds after Hargrove posted bail.  (Am. Compl. ¶ 1, ECF 11.)  Less than an hour later, an individual or individuals in a car attacked Hargrove, who ran

1

back to the prison as his assailants shot at him.  They followed Hargrove onto the prison's grounds, driving through a raised parking security arm, where they shot Hargrove ten times, killing him.  (*Id.* at ¶¶ 3–6.)  The parking lot's security booth was unmanned during this time.  (*Id.* at ¶¶ 2, 5.)  Plaintiffs' Amended Complaint asserts four claims under 42 U.S.C. § 1983 and two under Pennsylvania law; wrongful death and a survival action.

Plaintiffs want to amend their Complaint a second time to include information learned from a Workers' Compensation decision, specifically the identity of the corrections officer assigned to work the gate that night.  *See* (Mot. Leave Amend Compl. at 2, ECF 21).  They want to add the corrections officer, Dion Jones, as a defendant; allege newly discovered facts and assert two new state-law negligence claims.  *See* (Mem. Supp. Pls.' Mot. Leave Amend Compl. at 6–7, ECF 21).

II

Courts should freely grant leave to amend a complaint when justice so requires. *See* Fed. R. Civ. P. 15(a)(2).  "The liberal pleading philosophy of the federal rules does limit a district court's discretion to deny leave to amend."  *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984)).  However, "a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004).  The Third Circuit has noted:

> The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will

> become "undue," placing an unwarranted burden on the court, or will
> become "prejudicial," placing an unfair burden on the opposing
> party.  The question of undue delay . . . requires that we focus on the
> plaintiffs' motives for not amending their complaint to assert this
> claim earlier; the issue of prejudice requires that we focus on the
> effect on the defendants.

*Adams*, 739 F.2d at 868.  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted).

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the pleaded facts "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Well-pleaded factual allegations are presumed to be true; the Court must "then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  But this presumption "attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotations and citation omitted).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016)).

III

Plaintiffs argue their proposed amendments are not prejudicial and do not constitute undue delay because they are based on facts Jones's Workers' Compensation case revealed.  *See* (Pls.' Reply Br. Supp. Pls.' Mot. Leave Amend Compl. at 1–2, ECF 24.)  Defendants do not oppose the addition of Jones as a Defendant or the facts surrounding his conduct on the night of the shooting.  (Defs.' Resp. Partial Opp'n Pls.' Mot. Leave File Second Am. Compl. at 1, ECF 23.)  They do, however, contest the addition of the two proposed state-law claims and any amendments unrelated to the Workers' Compensation case.  (*Id.*)

The facts from Jones's Workers' Compensation case may be included in a Second Amended Complaint.  The allegations in paragraphs "a" through "o" in Plaintiffs' Memorandum are derived from Jones's Workers' Compensation case and enable Plaintiff to more fully describe what took place the night of Hargrove's death.  *See* (Mem. Law Supp. Pls.' Mot. Leave Amend Compl. at 6, ECF 21.)  Plaintiffs may not, however, add the allegation proposed in paragraph 166 or the proposed state-law claims in paragraphs 176–197.  *See* (Mot. Leave Amend Compl., Mot. Ex. A, Second Am. Compl., ECF 21-1.)

A

In their proposed Second Amended Complaint, Plaintiffs would delete what was previously paragraph 143[1] and replace it with proposed paragraph 166.[2] (Mot. Leave

---

[1] Paragraph 143 of the Amended Complaint states: "In fact, this policy and/or custom was so widespread that 'about 1,100 newly released inmates from 2017 to 2018 were discharged so late that there was no public transportation running from the prisons' as reported by the *Inquirer*."  (Am. Compl. ¶ 143, ECF 11.)

[2] Paragraph 166 of the proposed Second Amended Complaint states: "In fact, when the Inquirer [*sic*] reported prior to Rodie's death of the danger of late-night prison releases, Defendant,

4

Amend Compl., Mot. Ex. A, Second Am. Compl. ¶ 166, ECF 21-1.)  Plaintiffs contend

that paragraph 166 is a "reworking of the paragraph it replaced . . . in the larger

context of . . . the new information contained in the Workers' Compensation decision—

specifically the routine regarding incoming and outgoing prison vans and the apparent

lack of appropriately trained and/or staffed guard posts on the premises . . . ." (Pls.'

Reply Br. Supp. Pls.' Mot. Leave Amend Compl. at 4, ECF 24.)  The Amended

Complaint already contains these allegations.  *See* (Am. Compl. ¶ 47, ECF 11

(discussing the "few times an hour when a white prison van left the prison compound");

*id.* ¶ 38 (alleging that "Defendants . . . fail[ed] to train, supervise and discipline the

staff at CFCF . . . ."))  The "reworking" of the Amended Complaint is unrelated to facts

discussed in Jones's Workers' Compensation case, and Plaintiffs do not explain why

they didn't say this all along.

B

Plaintiffs also seek to add two new claims:  "Count V – Negligence" and "Count

VI – Negligence – Vicarious Liability."  (Mot. Leave Amend Compl., Mot. Ex. A, Second

Am. Compl. at 39–44, ECF 21-1.)   Plaintiffs argue these new claims "are *directly

derived* from the newly discovered evidence which revealed a new viable theory of

liability under an exception to the Pennsylvania Tort Claims Act which otherwise

restricts liability against municipal defendants."  (Pls.' Reply Br. Supp. Pls.' Mot. Leave

to Amend Compl. at 4, ECF 24) (emphasis in original).  These allegations are unduly

late—they are based on previously alleged facts and, in any event, would be futile.

---

the City of Philadelphia, did reduce the number of late night [*sic*] releases in full recognition of this
dangerous activity but did not eliminate the policy altogether or implement new protocols or
safeguards for those that were still released late at night."  (Mot. Leave Amend Compl., Mot. Ex. A,
Second Am. Compl. ¶ 166, ECF 21-1.)

i

Although delay alone is insufficient to deny leave to amend, "[d]elay may become undue when a movant has had previous opportunities to amend a complaint," so "the question of undue delay requires that [courts] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001). Plaintiffs "should not be permitted a 'do-over' to assert new legal theories and permutations of its prior claims that it could have asserted much earlier." *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 641 (E.D. Pa. 2009), *aff'd*, 377 F. App'x 150 (3d Cir. 2010).

Plaintiffs argue that because of Jones's Workers' Compensation case, they now "know why the security booth at the entrance gate to CFCF was vacant and why the traffic arm was left in an open and unattended position." (Pls.' Reply Br. Supp. Pls.' Mot. Leave to Amend Compl. at 5, ECF 24.) Plaintiffs alleged the essential facts all along, namely that an employee left the parking arm in the upright position, the security booth was unmanned, and the prison failed to properly train its employees. *See* (Am. Compl. ¶¶ 2–4, 35–36, 38, 75, 79–80, 83, 85, 113). The employee's specific identity, where he was when the booth was unmanned and why the traffic arm was up does not give rise to a claim the Plaintiffs could not have asserted much earlier. Plaintiffs have not explained why these additional details suddenly give rise to new negligence claims, or why the previous absence of these details prevented them from asserting them in their Amended Complaint. *See USX Corp. v. Barnhart*, 395 F.3d 161, 169 (3d Cir. 2004) (When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied.).

ii

Even if Plaintiffs did not unduly delay in asserting the proposed negligence claims, adding them now would be futile.  Plaintiffs believe this new information means the claims are no longer barred by the Pennsylvania Tort Claims Act.  *See* (Pls.' Reply Br. Supp. Pls.' Mot. Leave to Amend Compl. at 4, ECF 24).  That is not the case.  The Pennsylvania Tort Claims Act insulates political subdivisions from tort liability unless the claims fall within an express exception as enumerated in the statute.  *See* 42 Pa. Cons. Stat. Ann. § 8542.  The Act contains nine such exceptions, all of which are strictly construed.  *See Arnold v. City of Phila.*, 151 F. Supp. 3d 568, 581 (E.D. Pa. 2015) (citing *Finn v. City of Phila.*, 664 A.2d 1342, 1344 (Pa. 1995)).

Plaintiffs contend their new claims fall within the exception for "[t]rees, traffic controls and street lighting," which the statute defines as:

> A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. Cons. Stat. Ann. § 8542(b)(4).

Even if a prison parking security arm could be a "traffic control," and a "dangerous condition" in an elevated position, it could not have "created a reasonably foreseeable risk of the kind of injury which was incurred."  *Id.*  Hargrove's murder by assailants who followed him in a car onto the prison grounds was not the kind of risk that was reasonably foreseeable from a faulty parking arm.  The new claims do not fall

7

within an exception to the Pennsylvania Tort Claims Act and amending the Complaint to add them would be futile.

Plaintiffs' Second Amended Complaint must conform to "Exhibit A" to their Motion, excluding paragraphs 166 and 176–197. *See* (Mot. Leave Amend Compl., Mot. Ex. A, Second Am. Compl., ECF 21-1).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.