IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RODNEY HARGROVE, et al.,** : | |
| : | |
| Plaintiffs, : | |
| : | Civil Action |
| v. : | No. 21-4082 |
| : | |
| **CITY OF PHILADELPHIA, et al.** : | |
| : | |
| Defendants. : | |

**THE CITY DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
THIRD MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants the City of Philadelphia (the "City"), Warden Nancy Gianetta, Warden Michele Farrell, and Philadelphia Prison Department ("PDP") Commissioner Blanche Carney (collectively, the "City Defendants"), respectfully submit this reply brief in further support of their Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim ("Motion").

**I.       Plaintiffs Have Failed To Make Out A Due-Process Special-Relationship Claim.**

As the City Defendants have explained, the special-relationship exception applies only when the State deprives an individual of her ability to care for herself by detaining, incarcerating or involuntarily committing her. *See* City Defs.' Mem. Law Supp. 3d Mot. Dismiss at 4, ECF No. 29 [hereinafter Mem.]. In contrast, once the Decedent exited the transport vehicle at the SEPTA bus stop, he faced no "restraint of personal liberty," through incarceration or otherwise. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989).

Plaintiffs provide no convincing argument to the contrary. Instead, Plaintiffs fall back on the non-controversial proposition that "incarceration is not a prerequisite to establish a 'special relationship' theory," while conceding that a "'similar restraint of personal liberty'" is required. *See* Mem. Law Supp. Pls.' Resp. Opp. City Defs.' Mot. Dismiss Pl.'s 2d Am. Compl. at 16, ECF No. 30 [hereinafter Opp.] (quoting *D.R. v. L.R. v. Middle Bucks Area Vocational Tech. School*, 972 F.2d 1364, 1370 (3d Cir. 1992)). But here, at the time of the Decedent's murder, the Decedent was *neither* incarcerated, *nor* faced any *similar restraint* of his personal liberty by a state actor — let alone was even in the presence of one.

Plaintiffs offer no case law to support the novel proposition that the failure to supply transportation home from jail creates a special relationship with the state. *See, e.g., Buonadonna v. Se. Delco Sch. Dist.*, No. 14-cv-02708, 2015 WL 2365629, at *10 (E.D. Pa. May 18, 2015) (Pappert, J.) (failure to arrange for alternative transportation created neither special relationship nor state-created danger); *Sakamoto v. Cty. of Los Angeles*, 310 F. Supp. 3d 1050, 1056 (C.D. Cal.

2018) (rejecting the argument that the government "Defendant deprived Decedent of his ability to care for himself by releasing him [from a Los Angeles jail facility] without transportation, cash, or a phone"), *aff'd*, 800 Fed. App'x 487 (9th Cir. 2020)

Moreover, even assuming *arguendo* that a total deprivation of transportation could in and of itself create a special relationship, Plaintiffs have not alleged as much in their Second Amended Complaint. Rather, they have alleged that, due to the Decedent's late-hour payment of bail, the public bus system was shut down. But that did not deprive the Decedent of utilizing alternative methods of self-help to arrange for an alternative means to travel. Indeed, Plaintiffs themselves acknowledge at least two other options that were available – "rous[ing] a sleeping family member to come pick him up or order[ing] a tax or Uber." Opp. at 17. PDP employees took any action to restrain the Decedent from exercising these options.

## II. Plaintiffs Have Failed To Make Out A Due-Process State-Created Danger Claim.

As set forth in the City Defendants' opening brief, Plaintiffs' state-created danger claim warrants dismissal because they have failed to allege (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; and (3) a state actor affirmatively used his or her authority in a way that rendered the Decedent more vulnerable to danger than had the state not acted at all. *See* Mem. at 7, 12–14.

Plaintiffs first refuse to meaningfully engage with the City Defendants' cited case law that a plaintiff must allege the *particular harm* be foreseeable in light of "*prior incidents* with similar circumstances." *Vulpe v. Se. Pa. Transport. Auth.*, No. 20-cv-4709, 2021 WL 1387769, at *3 (E.D. Pa. Apr. 13, 2021) (Pappert, J.) (emphasis added); *see also* Mem. at 7–11 (citing cases, including, for example, *Mohammed ex rel. Mohammed v. Sch. Dist. of Phila.*, 335 F. Supp. 2d 779 (E.D. Pa. 2005), *aff'd*, Fed. App'x 79 (3d Cir. 2006); *D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. 17-cv-1553, 2017 WL 6557560 (E.D. Pa. Dec. 22, 2017); *Gayemen v. Sch. Dist. of the City of*

2

*Allentown*, No. 14-cv-1518, 2016 WL 3014896 (E.D. Pa. May 26, 2016), *aff'd*, 712 Fed. App'x 218 (3d Cir. 2017); *Burnette v. City of Phila.*, No. 13-cv-0288, 2013 WL 1389753 (E.D. Pa. Apr. 5, 2013); *Hagwood v. City of Phila.*, -- F. Supp. 3d --, No. 21-cv-4966, 2022 WL 1654810 (E.D. Pa. May 25, 2022)).

Unable to come even close to make such showing, Plaintiffs fall back on their citation of general City of Philadelphia crime statistics and the misleading assertion that "the local newspaper had featured investigative reports on this very safety issue a year and a half before." Opp. at 9. While it is true that Plaintiffs have alleged that the *Philadelphia Inquirer* reported on late-night releases in the summer of 2019, importantly, the danger on which the newspapers reported *was not* that of homicide but of newly released individuals engaging in *further criminal activity* and landing back in jail. *See* 2d Am. Compl. ¶ 53 ("**If inmates get out after busses quit running, 'they're screwed'**" because "they might . . . stay outside, relapse or get into some other trouble"); *id.* ¶ 53 (quoting the Executive Director of the Pennsylvania Prison Society as saying that she "has heard stories from incarcerated women who were offered drugs, as well as propositioned to engage in other criminal activity while waiting at the bus stop").

Further, without distinguishing the City Defendants' cases or arguing they were wrongly decided, Plaintiffs instruct Court to narrowly focus on three additional cases to the exclusion of all others. But none of these cases negate the requirement that a specific danger be foreseeable in order to make out a claim. Rather, in all three cases, the ultimate harm was far more obvious and closely tied to the alleged state action, without intervening forces. *See, e.g.*, *Kneipp v. Tedder*, 95 F.3d 1199 (1996) (holding that a woman having fallen and suffering from hyperthermia was foreseeable in near freezing temperatures where she was so visibly intoxicated that she "smelled of urine, staggered when she walked and, at times, was unable to walk without assistance"); *L.R.*

3

*v. School District of Phila.*, 836 F.2d 235 (3d Cir. 2016) (holding that it was patently obvious that a kindergartener risked kidnapping and sexual assault when released from school to an unauthorized stranger who was unable to show identification); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (holding that, prior to the age of cell phones, Uber, and Lyft, the risk of a woman's rape was foreseeable where her car was impounded in the middle of the night in an area "which ha[d] the highest aggravated crime rate in the county, outside the City of Takoma," and she had indicated that she had no means of getting home to the impounding officer).

Unlike those cases, this case involves the release of a grown male — not a kindergartener — from jail on his own volition after he paid late-night bail. There is no allegation that he was in a compromised state or deprived of his money, possessions, or phone. In addition, the proximate cause of the Decedent's death was not his release from jail but the criminal actions of a third party who mistook him for another individual approximately an hour later, tragically taking his life. *See, e.g.*, *L.R.*, 836 F.3d at 245 (noting "a distinction exists between harm that occurs to an identifiable or discrete individual . . . and harm that occurs to a 'random' individual with no connection to the harm-causing party" (alteration in original) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 239 (3d Cir. 2008)). Plaintiff's murder was particularly unforeseeable where, according to Plaintiffs' own allegations, thousands of individuals had been released at a similar time of the night over the last several years without one allegedly falling victim to a similar tragic attack.

Turning to the conscious-shocking requirement, Plaintiffs still do not explain how any alleged state actor's conduct comes anywhere close to the truly "conscious shocking" situations for which this concept is reserved. *Johnson v. City of Phila.*, 397 F. Supp. 3d 692, 703 (E.D. Pa. 2019), *aff'd*, 975 F.3d 394 (3d Cir. 2020). Of course, any time an individual is released anywhere onto the streets of a major metropolitan city, that individual will inevitably face some exposure to

4

crime. But that does not mean it necessarily shocks the conscious for a state actor to proceed with release. *See, e.g.*, *Saddie Debisette Gomez v. Se. Pa. Transport. Authority*, No. 22-cv-2949 (E.D. Pa. Oct. 27, 2022) ("Even where a state actor is aware of specific dangers, courts presume that the administration of government programs 'is based on the rational decision-making process that takes account of competing social, political, and economic forces.'" (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128–29 (1992)). What would be far more conscious shocking is the notion that correctional officer could unilaterally and paternalistically extend a pretrial detainee's incarceration past the date when the person is legally entitled to be released based on the officer's own notion of what is in the individual's best interests. Incarcerating people "for their own good" is repugnant to the United States Constitution.

Finally, Plaintiffs fail to convincingly counter the City Defendants' assertion that Plaintiffs have failed to allege a state actor affirmatively used his or her authority in a way that rendered the Decedent more vulnerable to danger than had the state not acted at all. Mem. at 11, 13–14. As an initial matter, the City Defendants have not waived this argument. Although Federal Rule of Civil Procedure 12(g) does provide that certain defenses are waived if not raised in an initial motion to dismiss, only the defenses in Rules 12(b)(2)–(5) are subject to waiver. *See* Fed. R. Civ. P. 12(h)(1); *see also, e.g.*, *See Lawton v. Peroulis*, No. 06-cv-01125, 2007 WL 1879973, *2 (D. Colo. June 27, 2007) (the defense of failure to state a claim is "expressly preserved against waiver"). Further, Rule 12(g)'s waiver provisions do not apply where, as here, a party's amended pleading has added and revised numerous factual allegations in support of a claim. *See, e.g.*, *Bhatti v. Republican Caucus of Pa. House of Representatives*, No. 18-cv-2178, 2020 WL 3412661, at *3 (M.D. Pa. June 22, 2020) (citing cases). And finally, even so, a court, in its discretion, may excuse the requirements of Rule 12(g) as a means of preventing unnecessary delay. *Penn-Mont Benefit Servs.,*

5

*Inc. v. Crosswhite*, No. 02-cv-1980, 2003 WL 203570, at *6 (E.D. Pa. Jan. 29, 2003).

Moving to the merits, Plaintiffs' argument that release is in and of itself an affirmative action flies in the face of well-established case law. *See, e.g.*, *Vorobyev v. Bloomsburg Univ. of Pa.*, No. 21-2111, 2022 WL 1499278, at *3 (3d Cir. May 12, 2022) (rejecting the argument "that release constitutes an affirmative act," and noting that neither *Kneipp*, 95 F.3d 1199, nor *L.R.*, 836 F.3d 235, support such an argument); *McClure v. Charlotte-Mecklenburg Bd. of Educ.*, No. 20-cv-00005, 2022 WL 317641, at *4 (W.D.N.C. Feb. 2, 2022) ("Plaintiff's allegation that the school imprudently released students into a parking lot at a standard dismissal time . . . does not rise to the level of affirmative action"). While Plaintiffs may be superficially attracted to *Kneipp* for this reason, the U.S. Court of Appeals for the Third Circuit has explained that the affirmative act in that case was not the release of the victim from the police, but rather the separation of the victim from her husband. *Vorobyev*, 2022 WL 1499278, at *3.

**III.     Plaintiffs Have Failed To Plead Sufficient Facts To Establish *Monell* Liability.**

Plaintiffs begin their defense of their *Monell* claim by erroneously asserting that "[t]he release of individuals . . . is an affirmative act," *see supra* p. 6, while ignoring all the allegations in the Second Amended Complaint about the actions that the PDP failed to take. 2d Am. Compl. ¶ 103 ("Defendants, City of Philadelphia, Warden Gianetta, Warden Farrell, and Prison Commissioner Carney and ABC Entities 1-10 failed to properly train employees including Defendant Jones and John Does 1-100, to properly maintain the safety and security of the premises at CFCF."); *id.* ¶ 104 ("Defendants had failed to install any security cameras capturing the main gate and entrance to the CFCF."); *id.* ¶ 165 ("failing to develop plans for safe pickups by having designated safe zones or cab or ride sharing services"); *id.* ¶ 60 (alleging PDP "release[] prisoners "around the clock" and without any safety measures").

Plaintiffs then seem to misunderstand the nature of the requirement that they allege that the

6

Decedent's constitutional rights were injured due to an unconstitutional policy. First, Plaintiffs assert that they need not "articulate a factual basis that demonstrates considerably more proof than a single incident," Mem. at 16, where they have identified "an existing unconstitutional municipal policy, which . . . can be attributed to a municipal policymaker," Opp. at 21 (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). But "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, *unconstitutional* municipal policy, which policy can be attributed to a municipal policymaker." *Okla. City*, 417 U.S. at 823–24 (emphasis added). Here, Plaintiffs have not alleged the adoption of any policy that is *facially* unconstitutional.

Turning to Plaintiffs' allegations regarding a failure to train, supervise, or discipline, Plaintiffs concede that they must show a "pattern of similar constitutional violations by untrained employees' have occurred, sufficient to put policymakers on notice of a training deficiency." Opp. at 22 (quoting *H.U. v. Northampton Area Sch. Dist.*, No. 20-2996, 2021 WL 4810170, at *3 (3d Cir. Oct. 15, 2021) (internal quotation marks omitted)). Yet despite this concession, Plaintiffs do not point to even a single similar constitutional violation by an untrained employee that occurred in the months or years leading up to the Decedent's death. After making this concession, Plaintiffs then simply regurgitate and/or refer the Court to their laundry list of about a dozen passive *in*actions of the PDP, all of which are pled in boilerplate form without supporting detail.[1] Opp. at 22–23. They then conclude on a note of pure speculation: "Had the City . . . ensured that adequate safety precautions were implemented and enforced when releasing prisoners late at night,

---

[1] Given that Plaintiffs have cited no less than twelve different failing as the cause of the Decedent's demise, one must wonder how any one of them could be truly the proximate cause of Plaintiffs' death.

7

including ensuring that a guard was stationed at the security booth and the security gate was not left open, [the Decedent] would still be alive today." *Id.* at 23.

### IV. Plaintiffs Have Failed To Plead Sufficient Facts To Establish The Personal Participation Of The Individual Defendants.

In addition to Plaintiffs' failure to state a claim generally, Plaintiffs also do not effectively counter the City Defendants' arguments that Plaintiffs have failed to allege specifically and separately the personal participation of Farrell, Carney, and Gianetta. *See, e.g.*, *Bookheimer v. Cty.. of Montgomery*, No. 10-cv-3381, 2010 WL 4289420, at *3 (E.D. Pa. Oct. 28, 2010) ("Bookheimer cannot lump together her allegations against Montgomery County officials with her allegations against the county itself and hope that something sticks against the individuals."). In contravention of well-established pleading standards, Plaintiffs exclusively rely on a handful of statements by Carney, almost all of which occurred after the Decedent's murder and concern PDP's actions to address the incident. Opp. at 24. Such statements post-dating the incident provide little insight into what, if any, personal participation Carney had in the events leading up to the Decedent's murder. An individual "cannot be said to have participated in [an alleged] constitutional violations simply because he [or she] was made aware of them well after their occurrence." *Briscoe v. Klaus*, No. 01-cv-1253, 2002 WL 35652679, at *2 (M.D. Pa. June 21, 2002). Nor can single sentence with Carney's name buried in a footnote about the release of individuals with their personal possessions suffice. *See* Opp. at 24. When it comes to Gianetta and Farrell, Plaintiffs refuse altogether to discuss any specific factual allegations against them. Although Plaintiffs claim that their refusal "in the interest of brevity," *id*, the more logical explanation is that Plaintiffs can find no non-conclusory allegations regarding these individuals that is worthy of any discussion.

### V. Plaintiffs Concede That Partial Dismissal Of The Complaint Is Warranted.

Although Plaintiffs previously conceded that the failure-to-intervene claim was meritless

8

and that their claims against Carney, Farrell, and Gianetta in their official capacities were duplicative, Plaintiffs once again brought such claims in their Second Amended Complaint. The City Defendants thus briefed these issues for a *third* time, only for Plaintiffs to once again assert in their opposition brief that Plaintiffs are withdrawing these claims. Opp. at 6, 24. Given the number of times that the City Defendants have been forced to brief these claims, only for Plaintiffs to withdraw them, the City Defendants now ask the Court to dismiss both the failure-to-intervene and official capacity claims *with prejudice.*

Date: November 7, 2022

Respectfully submitted,

*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal
Deputy City Solicitor
PA Bar No. 329676
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5448
danielle.rosenthal@phila.gov

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RODNEY HARGROVE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| v. | : | **No. 21-4082** |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| **Defendants.** | : | |

# CERTIFICATE OF SERVICE

I certify that on this date, a true and correct copy of the City Defendants' Reply in Further Support of Their Third Motion to Dismiss for Failure to State a Claim was filed via the Court's electronic filing system and is available for viewing and downloading.

Date: November 7, 2022

Respectfully submitted,

*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal
Deputy City Solicitor
PA Bar No. 329676
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5448
danielle.rosenthal@phila.gov

1